I'm Linda Poncho, Deputy Attorney General, and I'm the attorney for the appellant officers, and I'd like to reserve one minute time for rebuttal at the end. In this case, which involves an allegation of failure to protect and deliberate indifference, the district court judge should have granted qualified immunity to the officers. Taking into account the prongs of saucier, here the officers did not violate a constitutional law and their actions were objectively reasonable. When the officers heard of the threat that the inmate had, they took action. They didn't ignore him. They initiated a fact-finding, and they opened an investigation, and they referred the inmate to his counselor. Although in hindsight it may seem that they put him back in his cell with the instruction that he should consult with his counselor the next day, but they did initiate a fact-finding and a threat assessment. Where did they put him? They put him back in his cell. But the people he was afraid of? The people he was afraid of were on his ñ were on the main yard. Wherever they were. Were on the main yard, which is the general population, and they had said they had threatened him on the main yard when he was let out. But the fact that he was threatened, that there was no constitutional right that after one threat, the officers had to put him in administrative segregation. And their actions of initiating the threat assessment and the investigation, they were objectively reasonable based on what they knew. Threats rise to the constitutional level. How many threats was? There had been only one threat, so there was no constitutional right to protection with one threat, my inquiry was. How many threats would have to have been made before the Constitution kicked in a situation like this? Well, Your Honor, rather than how many threats had to be made, the issue for the officers was, was this threat, based on the threat that they learned of, did it offer the fact that they were ñ that the inmate was subjected to a substantial risk of serious harm, and here it did not? Well, if you take everything that he alleges in his complaint as true, what we know from that, and we have to take it as true, what we know is that he tells these guys, these defendants, about the threat, who's involved in the threat, when the place ñ when the harm's going to take place, and sort of the general circumstances about what had happened. What more do they need? Well, the officers ñ Now, this may not be true in the end. I understand. But for purposes of qualified immunity, the district court was required to take it as true. We're required to take it as true. Yes. The officers should be given deference to performing their duties, and as the record indicates, out of 1,000 inmates at the prison, about roughly a third complain of threats. So the officers should be given deference to, you know, actually follow through on their plan, which they did, which they initiated the investigation and fact-finding, and they had a plan for him to talk to his counselor the next day. So they acted reasonably based on the facts known to them, and they weren't required to ultimately make sure that the harm was averted. They were just required to act reasonably. And also, when you consider the instance of some harm versus substantial harm, the officers were not unnoticed that the inmate was going to be subjected to substantial harm in this case. And there's a ñ there was even discussion that there is like a paucity of literature of cases which indicate when some harm turns over to substantial harm. So the officers would not have known that the inmate, after the inmate told them of the threat, was going to be subjected to a substantial risk of serious harm. So they acted reasonably in what they did. They knew from his ñ the prisoner's background that he was a prisoner who was likely to be assaulted in this type of situation, didn't they? Didn't he have some sexual assault background or some such thing that history shows that they're more at risk in the general population? Yes, he certainly did have that history. However, as I ñ I'm sorry? I believe some of them, some of the defendants knew that. But my point is that even though they knew that, they weren't required to immediately take him away from the general population. As some testimony indicates, sometimes there are bogus threats. So an inmate can get off the general population because he owes a drug debt and so on. And so they use their discretion in investigating this complaint. And based on what they knew, there wasn't a substantial risk of serious harm, and they acted reasonably in what they did. That's really an issue for the finder of fact. Well, in the qualified immunity prongs, the second prong is did they act reasonably based on the information they knew? And they did. Although the inmate did say on the record that he told the officers everything, their perception was that they didn't have everything to remove him from the yard that day. And when he was ultimately assaulted the next day, and in fact the inmate came out of his cell the next day, he didn't tell the officers, no, I can't come out today, I'm going to be assaulted today, no, I'm afraid to go to work. He came out of the cell in the morning, and the assault took place at 5 p.m. Also, the inmate had been in the prison for eight months, from January to September, without any incidents of this type. So they would not have known that an assault was imminent. Well, but he had some warnings, and he told the officers, didn't he? Yes. He told the officers, yes. But how the officers responded was reasonable. So that's something to be decided some other time. They weren't required to be perfect, the officers. They weren't required to be infallible. Even if they made a reasonable mistake, they're still entitled to qualified immunity. And even though the harm wasn't ultimately averted, they're still entitled to qualified immunity because they acted reasonably based on the facts that they knew. All right. Thanks. Thank you. Good morning, Your Honor. I'm Jim Donato from Cooley-Galward. We represent the plaintiff in the appellee, Byron Swan, who's the inmate who's been the victim of the attack. I listened with interest to the State's presentation because it sounded the same theme that they sounded in their brief, which is the officers at issue somehow did not have enough information to evaluate the risk. In fact, as this Court has already suggested in its questions to counsel, that ignores the standard of review that governs this interlocutory appeal of qualified immunity. We are bound today, subject to proof at trial, of course, but bound today by the factual allegations that Mr. Swan has put forth. And those allegations, I think, are dispositive in support of the denial of qualified immunity. He is a member, as Judge Beam pointed out, of a special class of prisoners who are known to appellants to be particularly vulnerable to inmate-on-inmate violence. He has a history of sexual offenses. He refused to reveal that to his colleagues, and he was specifically threatened on the basis of that. In addition to that, he was warned twice by specific inmates before the attack. He was warned about five days before the attack to watch his back. He reported that to the prison officials. They disregarded it. He was warned two days before the attack by an inmate called Moreno, a Moreno cellmate, Redman, that he better be out on the yard because they had something for him. They put it more graphically. I won't repeat it in the actual quote. He went the day before the attack to his instructor, to his guidance counselor, to Lieutenant Holt, one of the defendants here, and to Captain Moore, and he expressly told them not only the threat but who the assailants were and why he was being threatened. Now, the State says that the officers acted reasonably in response to that by returning him to his cell. In fact, that's exactly why qualified immunity was denied. That was patently unreasonable in these circumstances. Those officers returned our client to the same facility where he was housed without any protection or segregation whatsoever from the two inmates who had threatened him, and indeed the next day who jumped him, cut his head, and broke his knuckle. And when they did that, Captain Moore, as alleged by our client, said, you came to prison, now you deal with it. That was one of the cruxes. Captain Moore said in response to the appellant's identification that he was going to get into trouble with these two inmates, Captain Moore said, you came to prison, now you deal with it. He didn't take any initiative to talk to the people that talked to the inmates that Mr. Swan identified as assailant. They didn't put him in any kind of special housing. They didn't even keep a close eye on him. They sent him back to the population with, frankly, callous regard. It's, you know, you're here, you have to go deal with it. Now, we know that's unreasonable because in their submissions to the district court, these two appellants specifically stated that one of the things they do in response to prison-on-prison violence is to interview the threatened victim, figure out who the assailants are, so they can take the step of putting that person into administrative segregation, controlling his interactions with the assailants. Now, they say that all that investigation is dependent upon learning from the victim who the assailants are and what the basis of the threat is. They got exactly that information here. Now, the State doesn't agree that that's going to be proved up at trial, and it very well may not be, but this is an interlocutory appeal from qualified immunity. The ability to say that those facts are not on the table doesn't exist at this point in the case. For that reason, the district court said, let's go to trial and we'll submit on that. Rebuttal. The appellant officers did not ignore or mock the concerns of the inmate when he stated that he was threatened. In hindsight, it might seem that they should have moved him that day when he was threatened and when he was assaulted, but the prong, the second prong in Saucy is not about hindsight. It's about if they acted objectively reasonable. Even though the inmate said that he told the officers everything, their perception was that they didn't have enough information to move him that day, but they had a plan. They didn't ignore him. They investigated or instituted an investigation and a fact-finding. They referred him to his counselor the next day. They weren't required to ultimately avert the harm. They were just required to act reasonably. And even if they made a reasonable mistake, the officers are still entitled to qualified immunity. Thus, the appellants ask that the judgment be reversed. Thank you. Thank you very much. The matter is then submitted.
judges: Pregerson, Beam Paez